IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO: 4:15-CV-00176-BR

| | |
|---|---|
| CHARLES KEITH RESPESS, SR., JOHN ) <br> CLAY RESPESS, AND CHARLES ) <br> KEITH RESPESS, JR. d/b/a CKC ) <br> FARMS; SLADES CREEK FARM, LLC; ) <br> MATT RESPASS; STEPHEN KEITH ) <br> DOUGLAS; HARRY PHELPS, JR.; ) <br> DELBERT ARMSTRONG FARMS, ) <br> INC.; DOUGLAS BOYD, JAMES BOYD, ) <br> and TODD BOYD d/b/a 3-B FARMS ) <br> PARTNERSHIP; and 3-B FARMS, INC., ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> CROP PRODUCTION SERVICES, INC., ) <br> ) <br> Defendant. ) | ORDER |

This matter is before the court on the motion to dismiss filed by defendant Crop Production Services, Inc. ("CPS"). (DE # 10.) Also before the court is the motion to remand filed by plaintiffs Charles Keith Respess, Sr., John Clay Respess, and Charles Keith Respess, Jr. d/b/a CKC Farms; Slades Creek Farm, LLC; Matt Respass; Stephen Keith Douglas; Harry Phelps, Jr.; Delbert Armstrong Farms, Inc.; Douglas Boyd, James Boyd, and Todd Boyd d/b/a 3-B Farms Partnership; and 3-B Farms, Inc. (collectively "plaintiffs"). (DE # 15.) The motions have been fully briefed and are ripe for disposition.

**I. BACKGROUND**

On 29 September 2015, plaintiffs filed this action against CPS in the Superior Court of Beaufort County, North Carolina, asserting a claim for violation of the North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq*. (Compl., DE #

1-1.) Plaintiffs are farmers, operators, and owners of farming operations in and around Beaufort County. (Id. ¶ 10.) CPS is a Delaware corporation with its principal place of business in Loveland, Colorado. (Id. ¶ 9; Notice of Removal, DE # 1, ¶ 22.) The parties agree that CPS has numerous locations in North Carolina, including two agricultural supply stores located in Beaufort County: the Pantego store and the Belhaven store. (Compl., DE # 1-1, ¶ 9; Def.'s Mem., DE # 11, at 5.)

Plaintiffs allege that CPS violated the UDTPA in two ways. First, plaintiffs allege that the Belhaven store engaged in an unfair and deceptive practice by repeatedly charging plaintiffs excessive amounts for agricultural supplies in relation to other CPS locations during the four years preceding the filing of the complaint. (Id. ¶¶ 14, 16-27, 34.) Second, plaintiffs claim that the Belhaven store "recommended products which were not necessary and, in at least one instance, sold soy bean seeds which had been previously recalled resulting in an anemic crop and actual loss to one or more Plaintiffs." (Id. ¶ 28.) In the prayer for relief, each plaintiff seeks an award of no less than $25,000 in actual damages, treble damages, and attorneys' fees. (Id. ¶ 42a.) Each of the plaintiffs also seeks to recover punitive damages "in excess of $25,000." (Id. ¶ 42b.)

On 3 November 2015, CPS removed this action to this court pursuant to 28 U.S.C. §§ 1441 and 1446 on the basis of diversity of citizenship. (DE # 1.) Shortly after removing this action, CPS filed a motion to dismiss on 17 November 2015. (DE # 10.) On 29 November 2015, plaintiffs filed a motion to remand the case to North Carolina state court pursuant to 28 U.S.C. § 1447(c). (DE # 15.)

## II. ANALYSIS

**A. Motion to Remand**

Because plaintiffs challenge the removal of this action to federal court, the court first considers the motion to remand. CPS removed this action on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332. (See DE # 1.) Federal district courts have original jurisdiction over civil actions in which the parties are of diverse citizenship and "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). Here, plaintiffs do not dispute that the parties are citizens of different states. (See Pls.' Mot. to Remand, DE # 15.) Rather, plaintiffs argue that CPS has failed to meet its burden of demonstrating that the federal jurisdictional amount in controversy has been met. (Pls.' Mem., DE # 14, at 2-3.) Plaintiffs specifically contend that the removal of this action was improper because the amount in controversy is not clear on the face of the complaint. (Id.) Plaintiffs further assert that the principles of economy, convenience, fairness, and comity favor remanding this case to state court. (Id. at 4.)

Courts ordinarily determine the amount in controversy by examining "the status of the case as disclosed by the plaintiff's complaint." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 292 (1938). The burden is on the party seeking removal to establish that the district court has original jurisdiction. Dixon v. Coburg Dairy, Inc., 369 F.3d 811, 816 (4th Cir. 2004). Where a plaintiff's complaint does not allege a specific amount in damages, the defendant need only prove by a preponderance of the evidence that the amount in controversy exceeds the requisite jurisdictional amount. Francis v. Allstate Ins. Co., 709 F.3d 362, 367 (4th Cir. 2013). "In order to satisfy the burden of preponderance of the evidence, [the] [d]efendant must show that it is more likely than not that the amount in controversy exceeds $75,000."

3

Larsen v. Assurant, Inc., No. 3:09-CV-0038, 2009 WL 1676993, at * 1 (W.D.N.C. June 16, 2009).  If the propriety of federal jurisdiction is doubtful, a remand is necessary.  Mulcahey v. Columbia Organic Chems. Co., 29 F.3d 148, 151 (4th Cir. 1994).

Here, both parties agree that the complaint does not state the specific amount of damages sought in the action by the individual plaintiffs.  (Pls.' Mem., DE # 14, at 2-3; Not. of Removal, DE # 1, ¶ 24.)  Instead, the complaint states "plaintiffs have each been harmed in an amount in excess of $25,000," the sum required to file an action in North Carolina state court pursuant to N.C. Gen. Stat. § 1A-1, Rule 8(a)(2).  (Compl., DE # 1-1, ¶ 37.)  However, the complaint does specify that plaintiffs seek to recover treble damages, attorneys' fees, and punitive damages in connection with their UDTPA claim.  (Id. ¶¶ 42a-b.)  In addition, the complaint states "[p]laintiffs were charged excessive amounts for products which would total millions of dollars when viewed collectively over the relevant time frame of doing business with the Defendant." (Id. ¶ 17.)  It was on the basis of these allegations concerning damages that CPS removed the case to this court. (See Not. of Removal, DE # 1, ¶¶ 24-30.)

From the face of the complaint, plaintiffs claim they each incurred at least $25,000 in damages due to CPS's unfair and deceptive trade practices.  (Compl., DE # 1-1, ¶ 42a.)  Because plaintiffs have asserted a claim under the UDTPA, each plaintiff would automatically be entitled to treble such damages ($75,000) if successful on this claim.  See N.C. Gen. Stat. § 75-16; Pinehurst, Inc. v. O'Leary Bros. Realty, 338 S.E.2d 918, 924 (N.C. Ct. App. 1986) (stating the award of treble damages is automatic and not subject to judicial discretion).  Similarly, each of the plaintiffs seeks to recover attorneys' fees, which may be awarded to the prevailing party in an unfair and deceptive trade practice suit.  See N.C. Gen. Stat. § 75-16.1 (providing that the court may, in its discretion, award reasonable attorneys' fees to the prevailing party in Chapter 75

cases). Attorneys' fees, if awarded, would likely increase the amount recovered by each plaintiff beyond $75,000. See Missouri State Life Ins. Co. v. Jones, 290 U.S. 199, 202 (1933) (holding that attorney's fees can be considered as a part of the amount in controversy if a state statute mandates or allows the award of attorney's fees).

Plaintiffs also seek punitive damages in connection with their UDTPA claim. (Compl., DE # 1-1, ¶¶ 41-42.) However, North Carolina does not permit the recovery of punitive damages for violations of the UDTPA. See Landmar, LLC v. Wells Fargo Bank, N.A., No. 5:11-CV-00097-MOC, 2014 WL 333562, at *2 (W.D.N.C. Jan. 29, 2014) (stating the remedies for a UDTPA violation "are provided by the statute and do not include punitive damages"); Pinehurst, 338 S.E.2d at 925 (holding that a plaintiff may not recover treble damages and punitive damages for unfair and deceptive trade practices in violation of N.C. Gen. Stat. § 75.1-1 because a treble damage award already has a punitive component and an award of punitive damages would be duplicative). Plaintiffs do not state an independent tort to accompany their UDTPA allegations, therefore, they would not be entitled to an award of punitive damages.[1] Consequently, plaintiffs' demand for punitive damages cannot be included in the amount in controversy.

Although plaintiffs cannot recover punitive damages under North Carolina law, it is facially apparent that plaintiffs' UDTPA claim could result in an award of treble damages and attorneys' fees in addition to actual damages. Viewing the aggregate amount of damages alleged in the complaint, each plaintiff's recovery would likely exceed $75,000. Accordingly, CPS has satisfied its burden of showing that it is more likely than not that the amount in controversy threshold has been met, and that removal on the basis of diversity jurisdiction is proper. Because

---

[1] North Carolina law does not permit a plaintiff to maintain an independent claim for punitive damages. Mitchell v. Lydall, Inc., No. 93-1374, 1994 WL 38703, at * 4 (4th Cir. Feb. 10, 1994) (table) (citing Shugar v. Guill, 283 S.E.2d 507, 509 (1981) (affirming dismissal of punitive damages claim because the plaintiff failed to state a claim in tort and its statutory claim did not permit recovery of punitive damages)). Accordingly, plaintiffs' punitive damages "claim" must be dismissed.

5

the federal court's jurisdiction is based on diversity of citizenship, the court may not decline to decide plaintiffs' state-law claims. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 356 (1988) (noting the exercise of diversity jurisdiction is not discretionary). Therefore, plaintiffs' motion to remand must be denied.

**B. Motion to Dismiss**

The court next considers CPS's motion to dismiss plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. Because this case is in federal court on diversity jurisdiction, North Carolina substantive law controls plaintiffs' state-law claims. Colgan Air, Inc. v. Raytheon Aircraft Co., 507 F.3d 270, 275 (4th Cir. 2007) (per curiam). The standard for a motion to dismiss, however, is a procedural matter controlled by federal law. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938); Hottle v. Beech Aircraft Corp., 47 F.3d 106, 109 (4th Cir. 1995) (reciting "the general rule that a federal court is to apply state substantive law and federal procedural law in diversity cases"). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com. Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

6

CPS moves to dismiss plaintiffs' claim for violations of the UDTPA on the ground that plaintiffs have failed to allege facts establishing that CPS engaged in any unfair or deceptive trade practice. (Def.'s Mem., DE # 11, at 1-2.) With respect to plaintiffs' pricing claim, CPS argues that it "has a right to let its prices reflect the different costs of dealing with different buyers and does not violate the [UDTPA] when it exercises that basic right." (Id. at 8.) Regarding the product quality at the Belhaven store, CPS argues that plaintiffs have failed to allege that CPS or its agents made false statements or concealed facts concerning the quality of its products in an effort to get plaintiffs to buy them. (Id. at 10-11.) The court will address these arguments in turn following a discussion of the applicable legal principles.

The UDTPA provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." N.C. Gen. Stat. § 75-1.1(a). "In order to establish a *prima facie* claim for unfair trade practices, a plaintiff must show: (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." Dalton v. Camp, 548 S.E.2d 704, 711 (N.C. 2001). An act or practice is unfair "when it offends established policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion . . . of power or position." Carcano v. JBSS, LLC, 684 S.E.2d 41, 50 (N.C. Ct. App. 2009) (quotation and emphasis omitted). An act or practice is deceptive if it "has the capacity or tendency to deceive." Marshall v. Miller, 276 S.E.2d 397, 403 (N.C. 1981). The determination as to whether an act or practice is unfair or deceptive is a question of law for the court to determine. See, e.g., Tucker v. Boulevard at Piper Glen LLC, 564 S.E.2d 248, 250 (N.C. Ct. App. 2002).

### 1. Pricing Claim

CPS first contends that plaintiffs' pricing claim is "based on the conclusion that CPS cannot sell products to different customers at different prices without violating the [UDTPA]," and that such a claim is not actionable under the UDTPA. (Def.'s Mem., DE # 11, at 6.) In support, CPS asserts that in <u>Van Dorn Retail Management, Inc. v. Klaussner Furniture Industries, Inc.</u>, 512 S.E.2d 456 (N.C.Ct. App. 1999), the North Carolina Court of Appeals recognized that "suppliers in North Carolina do not violate any North Carolina law—including the [UDTPA]—when they sell the same or similar products to different customers at different prices." (<u>Id.</u> at 7.)

Here, CPS characterizes plaintiffs' allegations as amounting to a claim for "price discrimination in the secondary line," i.e., price discrimination by a supplier between its customers. (<u>Id.</u>) CPS correctly notes that "there is no cause of action in North Carolina for price discrimination in the secondary line[.]" <u>See</u> <u>Van Dorn</u>, 512 S.E.2d at 457. The basis of plaintiffs' pricing claim is not, however, that CPS cannot sell the same products to different customers at different prices. Rather, plaintiffs' complaint is premised on the notion that they were routinely charged prices higher than the amount of money they owed. In their complaint, plaintiffs assert that the pricing of products is set by CPS for its various locations throughout North Carolina. (Compl., DE # 1-1, ¶ 13.) According to plaintiffs, a review of the billing over the last four years by CPS revealed that the Belhaven store engaged in the "practice of overcharging" by "bill[ing] excessive amounts for products in relation to other [CPS] locations." (<u>Id.</u> ¶¶ 14, 34.) Plaintiffs support this claim with several allegations concerning the billing practices at the Belhaven store: that they were charged a price 60% higher than normal pricing for Herbimax (<u>id.</u> ¶ 21); that they were charged a price 70% higher than normal pricing for Unfoamer (<u>id.</u> ¶ 22); that they were charged a price 80.71% higher than normal pricing for Quick

Ultra+Awaken (id. ¶ 23); that they were charged a price 53.67% higher than normal pricing for Lokomotive BLK (id. ¶ 24); and that they were charged a price 53.33% higher than normal pricing for a Scanner (id. ¶ 25). These allegations amount to a challenge to the systematic overcharging at the Belhaven location, an act that constitutes an unfair or deceptive trade practice. See Noble v. Hooters of Greenville (NC), LLC, 681 S.E.2d 448, 453 (N.C. Ct. App. 2009) (concluding that false invoices showing the amount of goods used and the amount of money owed have a tendency to deceive and, therefore, constitute an unfair and deceptive practice); Sampson-Bladen Oil Co. v. Walters, 356 S.E.2d 805, 808 (N.C. Ct. App. 1987) ("[I]t seems plain to us, and we so hold, that systematically overcharging a customer . . . is an unfair trade practice squarely within the purview of G.S. 75-1.1. . . .").

As to the other elements of plaintiffs' pricing claim, it is well established that an act or practice is committed in commerce where it involves the sale of goods. See Gress v. Rowboat Co., 661 S.E.2d 278, 281 (N.C. Ct. App. 2008). Moreover, with respect to proximate causation, plaintiffs allege that the practice of overcharging "prevented or dramatically reduced their ability to recoup a profit from their farming operations." (Compl., DE #1-1, ¶ 36.) Thus, plaintiffs' allegations suffice to establish a plausible claim for unfair and deceptive trade practices concerning the pricing of products at the Belhaven store. Accordingly, CPS's motion to dismiss will be denied as to this claim.

**2. Product Quality Claim**

CPS also moves to dismiss plaintiffs' claim for violation of the UDTPA with respect the quality of products offered at the Belhaven store. Plaintiffs' allegations supporting this claim are that CPS engaged in an unfair or deceptive trade practice when the Belhaven store recommended unnecessary products and sold soy bean seeds that had previously been recalled to one or more

plaintiffs. (Compl., DE # 1-1, ¶¶ 28, 41.) CPS contends that plaintiffs allege a mere breach of contract claim and that such a claim is insufficient to set forth a UDTPA claim without an accompanying allegation of substantial aggravating circumstances. (Def.'s Mem., DE # 11, at 10.)

It is well established that a mere breach of contract or breach of warranty does not, standing alone, constitute an unfair or deceptive trade practice. Broussard v. Meineke Discount Muffler Shops, Inc., 155 F.3d 331, 347 (4th Cir. 1998); Mitchell v. Linville, 557 S.E.2d 620, 623 (N.C. Ct. App. 2001) ("Neither an intentional breach of contract nor a breach of warranty . . . constitutes a violation of Chapter 75.") (citations omitted). In order to state a claim for unfair and deceptive trade practices, plaintiff must plead "substantial aggravating circumstances" accompanying the breach. Branch Banking & Tr. Co. v. Thompson, 418 S.E.2d 694, 700 (N.C. Ct. App. 1992) (citations omitted). As explained by the North Carolina Court of Appeals,

> Egregious or aggravating circumstances must be alleged before the provisions of the [UDTPA] may take effect. Aggravating circumstances include conduct of the breaching party that is deceptive. Finally, in determining whether a particular act or practice is deceptive, its effect on the average consumer is considered.

Becker v. Graber Builders, Inc., 561 S.E.2d 905, 910-11 (N.C. Ct. App. 2002) (internal citations omitted).

Here, plaintiffs rely on their dissatisfaction with the quality of the products and the advice offered at the Belhaven store to support their UDTPA claim. With respect to the defective soy bean seed, plaintiffs' allegations merely assert that CPS breached its duty to provide plaintiffs with a suitable product. "A promisee's dissatisfaction with a promisor's performance of its contractual obligations does not constitute substantial aggravating circumstances." Crop Production Services, Inc. v. Ormond, No. 4-11-CV-41-D, 2012 WL 147950, at *6 (E.D.N.C. Jan 18, 2012); see also Kelly v. Georgia-Pacific LLC, 671 F. Supp. 2d 785, 799 (E.D.N.C. 2009)

10

(dismissing plaintiff's UDTPA claim because allegations the defendant's product was defective "did not rise to substantial aggravating circumstances"). As to the product recommendations made by the Belhaven store, plaintiffs do not allege that they were misled or deceived about the quality of any of CPS's products or that they relied on this advice. Thus, even taken as true, plaintiffs' allegations do not rise to the level of egregious conduct necessary to support an unfair and deceptive trade practices claim. Because plaintiffs have failed to plausibly allege a UDTPA claim regarding the defective seed and poor advice given by the Belhaven store, CPS's motion to dismiss will be granted as to this claim.

### III. CONCLUSION

In summary, plaintiffs' motion to remand, (DE # 15), is DENIED. CPS's motion to dismiss, (DE # 10), is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims against CPS for punitive damages and for violation of the UDTPA based on the Belhaven's store failure to provide them with proper advice and products are DISMISSED. Plaintiffs' claim based on the pricing of products at the Belhaven store remains.

This 13 July 2016.

                                                                W. Earl Britt
                                                                Senior U.S. District Judge